IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DARRELL SMEDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:09-cv-1061-MEF |
| | ) | (LEAD CASE) |
| OFFICER TRIPP, | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| DARRELL SMEDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-cv-301-MEF |
| | ) | (MEMBER CASE) |
| CITY OF OZARK, | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| DARRELL SMEDLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-cv-510-MEF |
| | ) | (MEMBER CASE) |
| CITY OF OZARK, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) these cases were referred to the undersigned United

States Magistrate Judge for review and submission of a report with recommended findings

of fact and conclusions of law (Doc. 4, filed November 23, 2009).[1]  Pending before the Court

are the two motions to dismiss which the Court later construed as Motions for Summary

Judgment.  *See* Docs. 17 and 26.  For good cause, it is the recommendation that the motions

be granted.

## I. BACKGROUND

Plaintiff Darrell Smedley ("Smedley" or "Plaintiff") is a resident of Ozark in Dale

County, Alabama which is located within the Middle District of Alabama.  On November 17,

2009, Smedley initiated his first action by filing a Complaint and several motions.  *See* Docs.

1-3.  The Court denied Smedley's motion for production of evidence, but granted his motion

to proceed *in forma pauperis*.  *See* Docs. 5 and 7.  The Court also ordered Smedley to file an

amended complaint because his original complaint failed to identify with specificity what

relief he sought.  *See* Doc. 6.  Smedley filed his Amended Complaint on December 14, 2009.

*See* Doc. 8.  The Court conducted a review pursuant to 28 U.S.C. § 1915(e)(2)(B)[2] and

determined that dismissal of the Ozark Police Department was appropriate as it is not a legal

entity subject to suit or liability under Alabama law.  *See* Docs. 10 and 13.  The defendant

---

[1]    Smedley filed 3 separate lawsuits all pertaining to the same underlying facts.  Civ. Act. No. 1:10-cv-301 and Civ. Act. No. 1:10-cv-510 were consolidated into the primary case 1:09-cv-1061.  *See* Doc. 4 in both docket sheets.  All three matters have been referred to the magistrate judge for review.

[2]    The statute provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal – (i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

remaining from the original suit was Officer Tripp apparently sued in his official and individual capacities. *Id*. Summons for Officer Tripp were issued on March 1, 2010. *See* Doc. 14.

On April 5, 2010, Smedley initiated a lawsuit against the City of Ozark. *See* Civ. Act. No. 1:10-cv-301-MEF. The allegations essentially mirrored those in his first lawsuit thus the cases were consolidated on April 15, 2010. *See* Doc. 4 in 1:10-cv-301 and Doc. 23 in 1:09-cv-1061. On June 14, 2010, Smedley commenced another lawsuit against the City of Ozark which again contained the same complaints as those identified in his first two cases. *See* Civ. Act. No. 1:10-cv-510-MEF. This case was also consolidated with the other two. *See* Doc. 4 in 1:10-cv-301 and Doc. 32 in 1:09-cv-1061. As the complaints all relate to the same underlying allegations, the Court will address them concurrently below using the most recent complaint in each case. *See* Doc. 8 in 1:09-cv-1061, Doc. 1 in 1:10-cv-301, and Doc. 1 in 1:10-cv-510.

Smedley alleges - as best can be discerned from the handwritten complaints - that Defendants wrongfully arrested him and assaulted him during the arrest. Smedley asserts these claims against Ozark Police Officer Tripp and the City of Ozark. He further asserts these actions violate a number of his constitutional rights and brings these claims pursuant to 42 U.S.C § 1983 and Alabama state law. Smedley, in his three handwritten complaints, ostensibly asserts claims for violations of the Fourth, Eighth, and Fourteenth Amendments via 42 U.S.C. § 1983 as well as state law claims for false arrest/imprisonment, conspiracy,

harassment, reckless endangerment, and assault/battery.[3]  Smedley seeks compensatory and punitive damages.    In response, Defendants submitted their respective motions to dismiss. *See* Docs. 17-18 and 26-27.  Plaintiff timely filed responses to the motions.  *See* Docs. 20, 31, and 34.  While Defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), they also attached evidentiary support to their motions.  Further, Plaintiff also submitted evidence in support of his response briefs.  The Court notified the parties that the Court may not consider evidence on a Rule 12(b)(6) motion.  Federal Rule of Civil Procedure 12(d) plainly provides that when a party presents matters outside of the pleadings in a motion brought pursuant to Rule 12(b)(6), the motion must be treated as one for summary judgment pursuant to Rule 56 unless the Court excludes those matters outside the pleadings.  FED. R. CIV. P. 12(d). A court inclined to consider materials outside the pleadings presented by a motion pursuant to Rule 12(c) must give the parties a reasonable opportunity to present all materials pertinent to the motion.  *Id*.  Therefore, pursuant to FED. R. CIV. P. 12(d), the Court construed the 12(b)(6) motions as motions for summary judgment and gave the parties until July 23, 2010 to submit any additional materials, if any, for the Court to consider.  *See* Doc. 35. Defendants timely submitted additional materials on July 23, 2010.  *See* Docs. 38-39. Smedley submitted additional material, though after the deadline. *See* Doc. 40.  Nonetheless, the Court considered them in rendering this opinion.  The Court also gave Smedley a final

---

[3]     These are all the allegations as best the Court can discern from verbiage of the various complaints.  Though he mentions the Fifth Amendment, the Court finds nothing in his complaint which would pertain to a Fifth Amendment violation.

chance to submit proper sworn affidavits in opposition as *pro se* litigants frequently do not understand that handwritten pleadings do not sufficiently oppose a motion for summary judgment. Smedley submitted his supplemental response, but it still lacked a sworn affidavit or other appropriate summary judgment evidence. Consequently, the Court granted Defendants' motion to strike the supplemental response.

In his motion, Officer Tripp asserts (1) Smedley fails to invoke the jurisdiction of the Court, (2) Smedley fails to adequately identify Officer Tripp, (3) Smedley fails to sufficiently allege claims against Officer Tripp in his individual capacity, (4) Officer Tripp is entitled to qualified and discretionary immunity, (5) failure to state a claim, and (6) failure to meet heightened pleading standard. *See* Docs. 17-18. In the City of Ozark's motion, the city asserts (1) Smedley fails to invoke the jurisdiction of the Court, (2) Smedley's complaint is an improper municipal appeal, (3) failure to identify a policy, custom or practice which would render the City liable, (4) failure to meet the heightened pleading standard, and (5) failure to give prior notice to the City as required under the municipal claims statute. *See* Docs. 26-27.

The motions have been fully briefed by all the parties and are ripe for this Court's review.

## II.  STANDARD OF REVIEW

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient

pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted); *(overruled on other grounds by Randall v. Scott*, — F.3d —, 2010 WL 2595585 (11th Cir. 2010)); *see also Giles v. Wal-Mart Distribution Center*, 359 Fed. Appx. 91, 93 (11th Cir. 2009) (internal citations and quotations omitted) ( "Although *pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally, this liberal construction does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.").

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id.* at 249. A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *accord Greenberg v. Bell-South Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'"). Thus, the initial burden of proof rests on the movant. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. *Celotex*, 477 U.S. at 322-23; 106 S.Ct. at 2552-53. The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111

L.Ed.2d 695 (1990); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (conclusory assertions in absence of supporting evidence are insufficient to withstand summary judgment). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and may not rest upon the mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted). Thus, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Johnson*, 263 F.3d at 1242-43. Further, "all justifiable inferences are to be drawn in [that party's] favor." *Anderson*, 477 U.S. at 255; 106 S.Ct. at 2513; *see also McCormick*, 333 F.3d at 1243 (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an

element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted.  *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.  In other words, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.  *Id*. at 322, 106 S.Ct. at 2552.

### III.   DEFENSES ASSERTED WITHOUT MERIT

The Court will first address arguments made by Defendants which clearly lack merit even before turning to the substance of Plaintiff's allegations.

### A.   Failure to invoke federal court jurisdiction

Defendants first make a woefully inadequate statement - without analysis or citation to authority - that this Court lacks jurisdiction over this dispute.  Specifically, Officer Tripp and the City of Ozark both state "Smedley fails to allege or identify any state of facts invoking the jurisdiction to this Honorable Court."  *See* Doc. 17 at p. 2; Doc. 26 at p. 1.  Officer Tripp further states "[n]o allegations are made that would cause this court to have jurisdiction of the dispute, that is to say, there is no allegation of a violation of a Federally protected right."  *See* Doc. 18 at p. 7.  Smedley repeatedly refers to 42 U.S.C. § 1983 and clearly makes numerous constitutional references throughout his complaint.  Thus, the Court finds it properly exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343(a) (civil rights), 42 U.S.C. § 1983 (Civil Rights Act of 1871, as amended), and 28 U.S.C. § 1367 (supplemental jurisdiction).  Defendants' subject matter

jurisdiction argument is, therefore, without merit.

**B.      Failure to adequately identify Officer Tripp**

Officer Tripp asserts that Smedley failed to properly name him under Rule 4 of the Federal Rules of Civil Procedure.  Other than general reference to Rule 4, Officer Tripp cites no authority to show he is not properly named.  The Court rejects the argument that Officer Tripp has not been adequately identified to be sued as an individual.  Officer Tripp obviously received notice of the claim and was readily identified as the officer involved.  This is clear because Officer Tripp submitted an affidavit as well as several other documents in support of his motion which sufficiently describe the same incident involving Smedley's claims.  *See* Doc. 17, generally; Doc. 39, Affidavit of Thomas Michael Tripp.  In short, Defendants could readily identify the officer involved and therefore, Smedley satisfies the requirements of Rule 4 to identify the opposing parties.

**C.      Failure to meet heightened pleading standard**

Both Defendants argue that Smedley failed to meet the heightened pleading standard required in § 1983 cases where qualified immunity is involved.  Even under the law applicable when the Defendants filed their respective briefs, the heightened pleading standard did not apply to claims against municipal defendants.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).  As such, it was never applicable to the City of Ozark.

Subsequent to the filing of the Defendants' motions, the Eleventh Circuit issued

*Randall v. Scott*, — F.3d — , 2010 WL 2595585 (11th Cir. 2010).  In *Randall*, the Eleventh Circuit held that the heightened pleading standard no longer applies to individual defendants even if they are entitled to assert qualified immunity.  *Id.* at *8, *14.  Therefore, the Court must reject Defendants' heightened pleading argument based on the binding precedent set in *Randall*.

## IV.  DISCUSSION AND ANALYSIS OF PLAINTIFF'S CLAIMS

The Court must now decide whether summary judgment is appropriate as to Plaintiff's claims at this nascent phase of the case.

## A.    Official Capacity Claims Against Officer Tripp

Smedley apparently sues Officer Tripp both individually and in his official capacity as a Ozark police officer.  For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents.  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).  Thus, a suit against Officer Tripp in his official capacity is a suit against  the City of Ozark.  While a plaintiff may sue a defendant in her official capacity, "doing so is usually necessary only when a suit against the governmental entity itself is barred by the eleventh amendment to the United States Constitution." *Strickland v. City of Dothan, AL*, 399 F.Supp.2d 1275, 1285 (M.D. Ala. 2005) (citation omitted).  As there are no Eleventh Amendment immunity issues here,[4] there

---

[4]        Eleventh Amendment immunity extends to state agencies, it generally does not extend to independent entities such as municipalities.  *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Com'n*, 226 F.3d 1226, 1231 (11th Cir. 2000) (citing *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir. 1984); *see also Green*

is no need to maintain suit against Officer Tripp in his official capacity.  Thus, summary judgment is appropriate as to all claims against Officer Tripp in his official capacity.

**B.**     **Claims Against City of Ozark**

It is well established that there can be no *respondeat superior* for § 1983 claims. *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252, 1290 (11th Cir. 2004). Therefore the named defendant in a § 1983 suit may only be held liable for its own unconstitutional conduct and not that of subordinates or employees.  *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38.  "A local government may be held liable under § 1983 only for acts for which it is actually responsible, acts which the local government has officially sanctioned or ordered." *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (internal quotations and citations omitted).  Consequently, "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Id.* at 1292.  To determine whether the City of Ozark is a proper defendant "[a] court's task is to 'identify those officials or government bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County*, 520 U.S. 781, 784-85, 117 S.Ct. 1734, 1736, 128 L.Ed.2d 1 (1997) (quoting *Jett v. Dallas Indep.*

_____

*v. City of Bessemer, Alabama*, 202 F.Supp.2d 1272, 1274 (N.D. Ala. 2002) ("municipalities enjoy no sovereign immunity under the Eleventh Amendment."); *Richards v. Southeast Alabama Youth Services Diversion Center*, 105 F.Supp.2d 1268, 1273 (M.D. Ala. 2000) ("Eleventh Amendment does not typically apply to political subdivisions such as municipalities."

*School. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989)).  In short, the City of Ozark is liable only for constitutional deprivations that result from its customs, policies, and practices.

The Court searched through the verbiage for any indication of a specific policy, custom, or practice identified by Smedley in any of his three complaints.  Other than the frequent use of the phrase, the Court cannot find any reference.  In fact, in a variety of places, Smedley says "the City *did not* act on the basis of a custom policy or practice." *See, e.g.,* Doc. 8 in 1:09-cv-1061 at p. 5; Doc. 1 in 1:10-cv-301 at p. 7; Doc. 1 in 1:10-cv-501 at p. 7.[5] Beyond the general rhetoric and unsupported legal conclusions, Smedley did not show any policy, custom or practice by which the City of Ozark could be held liable.  Therefore, summary judgment is appropriate as to all claims against the City.

## C.    Eighth Amendment

The Eighth Amendment states in its entirety "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. AMEND. VIII.  Smedley references the Eighth Amendment, but links it exclusively to the actions by Officer Tripp in arresting and charging him.  However, the Eighth Amendment does not apply to Smedley because it was designed to protect those convicted of crimes and incarcerated as a result.  *Wilson v. Seiter*, 501 U.S. 294, 296-297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Whitley v. Albers*, 475 U.S. 312, 318, 106 S.Ct. 1078, 1083-84, 89 L.Ed.2d 251 (1986);

---

[5]    This is merely a sample.  The Court does not purport this to be a comprehensive list.

*Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003).  While Smedley was convicted of public intoxication, the Eighth Amendment allegations made by Smedley only pertain to the events leading up to his arrest and the subsequent charges.  Accordingly, to the extent Smedley's factual claims predate conviction and subsequent imprisonment, they are not actionable under the Eighth Amendment and the claims against Officer Tripp in his individual capacity merit dismissal.

**D.    Qualified Immunity for § 1983 claims**

The Court now looks to whether Officer Tripp is entitled to qualified immunity for Smedley's remaining § 1983 claims pertaining to false arrest, excessive force, and failure to provide medical care.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).  Courts utilize a two-part framework to evaluate qualified immunity claims.  The first element is whether the plaintiff's allegations, if true, establish a constitutional violation. *Pearson v. Callahan*, — U.S. — , — ,129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).  The second element is whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Id*. at 816.  "Both elements of this test must be present for an official to lose

qualified immunity, and this two-pronged analysis may be done in whatever order is deemed

most appropriate for the case." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir.

2010) (citing *Pearson*, 555 U.S. at — , 129 S.Ct. at 821).

    **i.**    **§ 1983 False Arrest & False Imprisonment**

A threshold issue not raised by either party is the importance of *Heck v. Humphrey*, 512

U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and its progeny.  The Court finds it

appropriate to raise it now.

In *Heck*, the United States Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486-87, 114 S.Ct. at 2372.

Smedley asserts that his arrest was without probable cause and therefore violated his

constitutional rights against unreasonable seizure.  The Fourth Amendment, which is

applicable to the States through the Fourteenth Amendment, guarantees the right against

unreasonable searches and seizures and an arrest without probable cause violates that right.

*Brown*, 608 F.3d at 734 n. 15 (citations omitted).  An arrest without a warrant and lacking

probable cause violates the Fourth Amendment and is actionable under § 1983.  *Id*. at 734.

Smedley's claims for false arrest as well as his claims for false imprisonment rest

solely on his assertion that he was not guilty of the crimes for which he was arrested and

ultimately convicted.  He states that Officer Tripp acted improperly in arresting and charging

him.  The Court notes that not all § 1983 actions for Fourth Amendment search and seizure

violations imply the invalidity of a conviction and *Heck* would not generally bar such claims.

*Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003).  However, Smedley's allegations and

reasoning necessarily challenge the validity of the charges and convictions.  *See, e.g. Abella*

*v. Rubino*, 63 F.3d 1063, 1064-65 (11th Cir. 1995) (holding that the plaintiff's argument that

the defendants "knowingly and willfully conspired to convict him falsely by fabricating

testimony and other evidence against him" was barred under Heck because "[j]udgment in

favor of Abella on these claims [that the defendants unconstitutionally conspired to convict

him of crimes he did not commit] 'would necessarily imply the invalidity of his conviction.'");

*see also Vickers v. Donahue*, 137 Fed. Appx. 285 (11th Cir. 2005) (affirming district court's

grant of summary judgment and its finding that claims alleging malicious and false arrest

would necessarily invalidate a conviction that had not been reversed or declared invalid and

therefore barred under *Heck*).  Accordingly, Smedley's claims for false arrest and false

imprisonment would apparently be *Heck*-barred.

Aside from the holding in *Heck*, Officer Tripp is entitled to qualified immunity.  To

receive qualified immunity, an officer need not have actual probable cause, but only "arguable" probable cause. *Brown*, 608 F.3d at 734 (citations omitted). "In the context of a claim of false arrest, an officer is entitled to qualified immunity where that officer had 'arguable probable cause,' that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." *Davis v. Williams*, 451 F.3d 759, 762-63 (11th Cir. 2006) (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004)) (internal citation and quotation omitted). To determine if "arguable probable cause" exists, courts look at the totality of the circumstances, construing the facts in the light most favorable to the plaintiff. *Id*. Considering the facts in the light most favorable to Smedley, the Court determines that there was, at the very least, *arguable* probable cause to arrest Smedley. Smedley acknowledges that he heard Officer Tripp call to him, but that he kept walking because he knew "he violated [no] rules or regulation." *See* Doc. 8 at p. 6. He even saw Officer Tripp running towards him and still did not stop. *Id*. Officer Tripp had at least arguable probable cause, if not actual, to arrest Smedley for obstructing governmental operations. *See* ALA. CODE § 13A-10-2(a). Alabama law defines obstructing governmental operations as:

> (a) A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he:

>> (1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or

>> (2) Intentionally prevents a public servant from performing a governmental

function.

(b) This section does not apply to the obstruction, impairment or hindrance of the making of an arrest.

(c) Obstructing governmental operations is a Class A misdemeanor.

ALA. CODE § 13A-10-2(a).  Officer Tripp had at least arguable probable cause to arrest Smedley for obstructing governmental operations because in the course of his duties in patrolling the area, he called to Smedley and Smedley ignored Officer Tripp despite hearing him and seeing him approach.  In short, the Court only looks to whether a reasonable officer knowing what Officer Tripp knew at the time, objectively could have believed probable cause existed.  The Court concludes that Officer Tripp objectively could have believed it existed and therefore is entitled to qualified immunity on the § 1983 false arrest.  Since there was probable cause as to the obstructing governmental operations charge, the Court need not look to the public intoxication charge.  Moreover, because Plaintiff's false imprisonment claim is predicated on his false arrest claim, the claim also fails.  "A detention on the basis of a false arrest presents a viable Section 1983 action ." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996).  "A Section 1983 false imprisonment claim must meet the elements of common law false imprisonment and establish that the imprisonment worked a violation of the Fourteenth Amendment due process rights." *West v. Tillman*, 2006 WL 2052520, *7 (S.D. Ala. 2006) (internal quotations and citation omitted).  Under Alabama law, false imprisonment "consists of the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." ALA. CODE § 6-5-170 (1975).  *See Big*

*B, Inc. v. Cottingham*, 634 So.2d 999, 1001 (Ala. 1993). The absence of probable cause is a prerequisite of a false imprisonment claim. *Ortega*, 85 F.3d at 1526 ("Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under Section 1983 for false imprisonment based on a detention pursuant to that arrest."); *see also Hogan v. City of Montgomery*, 2006 WL 3052997, *6 (M.D. Ala. 2006) (Holding that if defendant is entitled to qualified immunity of false arrest claim, then he is also entitled to it for false imprisonment claim). As this Court has already found that arguable probable cause existed to arrest Plaintiff without a warrant, his claim for false imprisonment based upon that arrest also fails since Officer Tripp is entitled to qualified immunity.

### ii.   § 1983 Excessive Force

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown*, 608 F.3d at 737 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)). Though summary judgment should be granted in favor of the wrongful arrest claim, the excessive force claim must be analyzed independently. *See Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006) (A genuine "excessive force" claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest.).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical

coercion or threat thereof to effect it." *Lee*, 284 F.3d at 1197 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989)). Though some force is permitted, whether the force is reasonable relies on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Brown*, 608 F.3d at 737-38 (quoting *Vinyard*, 311 F.3d at 1347).

Whether a constitutional violation occurred is measured by the "objective reasonableness" standard. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing *Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S.Ct. 596, 598, 160 L.Ed.2d 583 (2004)). An officer is entitled to qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive. *Graham*, 490 U.S. at 396-97; *Brown*, 608 F.3d at 738. Consequently, the Court focuses solely on the objective basis and not the officer's subjective belief. *Brown*, 608 F.3d at 738 (citing *Hadley*, 526 F.3d at 1330). "To balance the necessity of the use of force against the arrestee's constitutional rights, a court must evaluate several factors, including '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Id*. (quoting *Vinyard*, 311 F.3d at 1347 which in turn quotes *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872).

According to Smedley in his amended complaint, he was merely walking through the

neighborhood when Officer Tripp ran toward him with a taser in his hand.  *See* Doc. 8 at p.

6.  When Officer Tripp reached Smedley, he first tasered Smedley and then used pepper spray.

Officer Tripp obviously paints a different picture.  Normally, the Court must view all the

evidence in the light most favorable to Smedley; however, Smedley did not file a sworn

affidavit, but instead merely relies on his handwritten pleadings and responses.  Thus, Officer

Tripp's affidavit is unopposed.[6]

Officer Tripp uncontroverted affidavit states that he observed Smedley walking in the

neighborhood and thought he might be intoxicated.  *See* Doc. 39, Affidavit of Tripp.  Despite

calling out for him to stop, Smedley began moving more swiftly away from Officer Tripp.

Smedley then began to run, but a fence prevented him from getting far.  When Officer Tripp

tried to confront him, Smedley tried to run around him.  Officer Tripp commanded him to

stop, but Smedley continued to run away.  At this point, Officer Tripp used his M-26 Tazer

and it hit Smedley in the back.  Smedley was immobilized until he rolled over and broke the

---

[6] "As a general rule summary judgment should not be granted until the party opposing
the motion has had an adequate opportunity to conduct discovery." *Reflectone, Inc. v. Farrand
Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989).  However, the Court recognizes that there is no
blanket prohibition on the granting of summary judgment prior to discovery. *See, e.g., Cordoba
v. Dillard's, Inc.*, 419 F.3d 1169, 1188 (11th Cir. 2005) (stating expectation that district courts
will be open to summary judgment motions filed at early stage of litigation if moving party
clearly apprises court that prompt decision will likely avoid significant unnecessary discovery.).
The facts of this particular case showed that the evidence attached to the original motion to
dismiss clearly established that the majority of claims were meritless.  Qualified immunity should
act as a shield against claims at the earliest stage and exclusion of the evidence contravened that
principle.  Further, at this point, Plaintiff has been given ample opportunity and instruction as to
what he needed to file to properly oppose summary judgment and still failed to do so.  *Pro se*
litigants are still obligated to follow the rules - thus, summary judgment must be granted.

Tazer leads.  He got back up and ran away.  Officer Tripp followed him and once beside him, sprayed pepper spray in Smedley's face.

In looking at the *Graham* factors, the Court determines first that the suspected crime was not serious.  Specifically, Officer Tripp suspected Smedley was guilty of public intoxication - a misdemeanor.  Under factors 2 and 3, Smedley was not a threat to himself, but per the unopposed affidavit submitted by Officer Tripp, he was fleeing.  An objectively reasonable officer in the same situation would have likely believed that the use of force was not excessive.  Consequently, Officer Tripp is entitled to qualified immunity as to the § 1983 claim of excessive force.

### iii.    § 1983 Medical Care

Smedley states that Officer Tripp refused to provide him medical attention after he was tasered and pepper sprayed.  *See* Doc. 8 at p. 6.  The Court construes the allegation as a deliberate indifference claim pursuant to the Fourteenth Amendment.  To prove deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir.2007).

A "serious medical need" is one that "if left unattended, poses a substantial risk of serious harm" and can be either: (1) "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"; or (2) one where "a delay in treating the need worsens the condition."

*Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1307 (11th Cir. 2009).   Construing Plaintiff's

complaint liberally, Smedley alleged a serious medical condition as he was sprayed with

pepper spray, which this Circuit has recognized may constitute a serious medical need.  *See,*

*e.g. Nasseri v. City of Athens*, 2010 WL 1377596, *3-4 (11th Cir. 2010) (unpublished).  Even

with a liberal construction, Smedley's complaint did not allege sufficient facts to show that

Officer Tripp was deliberately indifferent to that serious medical need.  Nor does his response

to the summary judgment motion provide any more facts as to this claim.  Thus, Smedley has

not shown the second element -  defendant's deliberate indifference to that need - which

would be established by (1) subjective knowledge of a risk of serious harm, (2) disregard of

that risk, (3) by conduct that is more than mere negligence.  *Burnette v. Taylor*, 533 F.3d

1325, 1330 (11th Cir. 2008).  While Smedley is not required to meet a heightened pleading

standard, he must still meet the minimum pleading standard as discussed in *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  As such, factual

allegations must be enough to raise a right to relief above the speculative level.  *Id*. at 555,

127 S.Ct. at 1965.  It is not enough that the pleadings merely "le[ave] open the possibility that

the plaintiff might later establish some set of undisclosed facts to support recovery."  *Id*. at

1968 (internal quotation and alteration omitted).  Plaintiff does nothing beyond state he was

denied medical care and which alone is insufficient to sustain the claim.

E.      **State Law Claims**

i.      **Harassment and Reckless Endangerment**

Smedley asserts claims for harassment under ALA. CODE § 13A-11-8 and reckless endangerment under ALA. CODE § 13A-6-24.  Each statue refers to misdemeanor crimes. Thus, the Court construes these claims as a request for criminal prosecution and sanctions. However, a "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767 n. 13, 125 S.Ct. 2796, 2809, 162 L.Ed.2d 658 (2005) (quoting *Linda R. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973)); *Leeke v. Timmerman*, 454 U.S. 83, 85-86, 102 S.Ct. 69, 70, 70 L.Ed.2d 65 (1981); *see also Davit v. Davit*, 173 Fed. Appx. 515, 517 (7th Cir. 2006) (unpublished opinion and citations omitted) ( "A private individual does not have standing to demand the criminal prosecution of another individual, let alone standing to prosecute the individual himself.").  Thus, these claims are without legal merit and warrant dismissal.

ii.      **False arrest, imprisonment, and assault/battery**

Under Alabama law, "[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles*, 852 So.2d 117, 122 (Ala. 2002); *see also Brown*, 608 F.3d at 740-41 (citing *Hayles*). The state-agent immunity doctrine bars suit against law enforcement officers effecting arrests, except to the extent the officer acted willfully, maliciously, fraudulently, in bad faith, beyond

his legal authority, or under a mistaken interpretation of law, or if the Constitution or laws of the United States or Alabama require otherwise. *See Ex parte Cranman*, 792 So.2d 398 (Ala. 2000) (plurality opinion formally adopted in *Ex parte Butts*, 775 So.2d 173, 177-78 (Ala. 2000)). Alabama Code § 6-5-338 outlines discretionary function immunity which immunizes law enforcement officers from tort liability for conduct within the scope of their discretionary law enforcement duties. ALA. CODE § 6-5-338(a) (""Every peace officer ... shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."). Thus, "the restatement of State-agent immunity as set out in *Cranman*, 792 So.2d at 405, now governs the determination of whether a peace officer is entitled to immunity under § 6-5-338(a)." *Ex parte City of Tuskegee*, 932 So.2d 895, 904 (Ala. 2005). Furthermore, the Alabama Supreme Court established a burden shifting framework for application of the state-agent immunity test. *Ex parte Estate of Reynolds*, 946 So.2d 450, 452 (Ala. 2006). First, a defendant bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the state agent to immunity. *Id*. If the defendant makes that showing, the burden then shifts to the plaintiff to show that the state agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority. *Id*.

In looking to the claims against Officer Tripp, it is clear that Officer Tripp was acting within the scope of his discretionary function as a law enforcement officer. Thus, the burden shifts to Smedley to show Officer Tripp acted willfully, maliciously, fraudulently, in bad faith,

beyond his legal authority, or under a mistaken interpretation of the law.  As noted in *Brown*,

the Alabama Supreme Court has applied the same "arguable probable cause" standard utilized

in federal court qualified immunity analysis.  *Borders v. City of Huntsville*, 875 So.2d 1168,

1180 (Ala. 2003).  Therefore, Officer Tripp is entitled to both state-agent and statutory,

discretionary-function immunity under § 6-5-338(a) for the same reasons as discussed for the

§ 1983 claims.

### iii.    Civil Conspiracy

"Civil conspiracy is a combination of two or more persons to accomplish an unlawful

end or to accomplish a lawful end by unlawful means." *Keith v. Witt Auto Sales, Inc*., 578

So.2d 1269, 1274 (Ala. 1991) (citing *Eidson v. Olin Corp*., 527 So.2d 1283 (Ala.1988)).  In

the case at hand, Smedley avers Officer Tripp conspired with himself in unlawfully arresting

Smedley.  As a conspiracy requires more than one individual, the claim fails as a matter of

law.  Further, "liability for civil conspiracy rests upon the existence of an underlying wrong

and if the underlying wrong provides no cause of action, then neither does the conspiracy."

*Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So.3d 1185, 1196 (Ala. 2008)

(citations omitted). As Smedley was convicted of the alleged crimes, his claim for false arrest

fails which results in the conspiracy failing as well.

### V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that

(1)     The  Motions for Summary Judgment (Docs. 17 and 26) be GRANTED.

(2)    Plaintiff's claims against the City of Ozark and Officer Tripp be dismissed.

(3)    Cases 1:09-cv-1061-MEF, 1:10-cv-301-MEF, and 1:10-cv-510-MEF be closed.

(4)    Any outstanding motions be DENIED as moot.

**IT IS FURTHER ORDERED** that the parties file any objections to the this Recommendation on or before **December 27, 2010.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 10th of December, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE